UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JACOB'S JEWELRY CO., LTD.,

                Plaintiff,

-v.-

TIFFANY AND COMPANY, TIFFANY AND COMPANY U.S. SALES LLC, and TIFFANY (NJ) LLC,

                Defendants.

20 Civ. 4291 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

    Plaintiff Jacob's Jewelry Co., Ltd. is the owner of United States Patent Number 9,609,923 (the "Patent"), entitled "Color Changing Multiple Stone Setting," which Patent Plaintiff alleges Defendants Tiffany and Company, Tiffany and Company U.S. Sales, LLC, and Tiffany (NJ) LLC (collectively, "Defendants") have infringed by selling color-changing jewelry that incorporates features within the purview of the Patent. Defendants have moved to dismiss Plaintiff's Complaint, arguing that the Patent is directed to a natural phenomenon and thus is invalid under 35 U.S.C. § 101 for failure to claim patent-eligible subject matter. For the reasons that follow, the Court denies Defendants' motion.

# BACKGROUND[1]

## A.     Factual Background

The Patent was granted to Plaintiff on April 4, 2017. (Compl. ¶ 9). It recites the invention of a "setting for [gemstone] arrangements that change color when the viewing angle is changed independently from the lighting conditions and without application of a topcoat." (Patent, 1:43-46). As relevant here, Claim 16 of the Patent describes:

> A multiple stone setting, comprising:
>
> a base;
>
> a plurality of first stones placed in a first row, wherein each first stone being set on a first plane surface of said base, said first stones displaying a first color; and
>
> a plurality of second stones set in a second row, each second stone being set on a second plane surface of said base which is contiguous with said first surface, such that said plurality of second stones is positioned substantially perpendicularly to said plurality of first stones, said second stones displaying a second color that differs from said first color;
>
> wherein each of said first and second stones includes a table facing outwards;
>
> wherein said first row displays said first color;
>
> wherein said second row displays said second color that differs from said first color; and

---

[1]     This Opinion draws its facts from Plaintiff's Complaint, which is the operative pleading in this matter ("Compl." (Dkt. #1)), and the attached patent document ("Patent" (Dkt. #1-1)).

For ease of reference, the Court refers to Defendants' Memorandum of Law in Support of Their Motion to Dismiss as "Def. Br." (Dkt. #32); Plaintiff's Memorandum of Law in Opposition to the Motion to Dismiss as "Pl. Opp." (Dkt. #34); and Defendants' Reply Memorandum of Law as "Def. Reply" (Dkt. #36).

> wherein each of said first stones and each of said second stones has a respective pavilion and a respective girdle, and wherein said respective girdles and said respective pavilions of the first stones are located in close proximity to the respective girdles and respective pavilions of the second stones, thereby substantially covering and obscuring the base of the setting where the first and second stones are in close proximity to each other, whereby a visible overall color perception of said setting changes as a viewing angle of said setting gradually changes, varying from one to the other of said first and second colors, owing to the first stones gradually obscuring the second stones and the second stones gradually obscuring the first stones, as the viewing angle of said setting is gradually changed as the setting is being observed, while rotating said setting around an axis of the setting that passes between the first and second rows of stones.

(*Id.* at 7:32-8:14). Plaintiff alleges that one or more Defendants "purchase[] and sell[] color changing jewelry that is/are within the purview of the [Patent]," and specifically is constructed with all of the limitations contained in Claim 16, without authority from Plaintiff. (Compl. ¶¶ 11-12).

**B.     Procedural Background**

Plaintiff filed the operative Complaint in this matter on June 5, 2020. (Dkt. #1). On August 24, 2020, Defendants filed a letter requesting a conference regarding an anticipated motion to dismiss the Complaint (Dkt. #27), to which letter Plaintiff responded the next day (Dkt. #28). On August 26, 2020, the Court dispensed with the pre-motion conference and instead set a briefing schedule on Defendants' motion. (Dkt. #30). In accordance with that schedule, Defendants filed their motion to dismiss and accompanying memorandum of law on September 25, 2020 (Dkt. #31-32); Plaintiff filed

3

opposition papers on October 22, 2020 (Dkt. #34-35); and Defendants filed their reply on November 9, 2020 (Dkt. #36).

On November 17, 2020, Plaintiff filed a letter notifying the Court of supplemental authority. (Dkt. #37). Defendants moved to strike Plaintiff's letter as an improper sur-reply and provided their own memorandum of law reiterating arguments in support of their motion. (Dkt. #38-39). On December 7, 2020, the Court denied Defendants' motion to strike and accepted both supplemental submissions. (Dkt. #40). On January 5, 2021, Defendants filed an additional notice of supplemental authority. (Dkt. #41). Defendants' motion is now fully briefed and ripe for resolution.

## DISCUSSION

### A. Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Defendants move for dismissal of Plaintiff's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. (Def. Br. 5-6). To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). In determining the viability of Plaintiff's claims, the Court must accept as true all well-pleaded factual allegations in the complaint. *Id.* at 678. Additionally, the Court may consider not only the complaint itself, but also any

written instrument attached to the complaint as an exhibit, any statements or documents incorporated by reference in the complaint, and documents that are "integral" to the complaint even if they are not incorporated by reference. *See Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see generally Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (discussing materials that may properly be considered in resolving a motion brought under Fed. R. Civ. P. 12(b)(6)).

**B.     Patentability Under 35 U.S.C. § 101**

Defendants seek to dismiss Plaintiff's Complaint on the grounds that "the claims of the Asserted Patent are directed to the natural phenomenon that objects look different from different angles of viewing," and that the Patent does not state "an inventive way of applying conventional know-how or even a new way[.]" (Def. Br. 1). Defendants also argue that formal claim construction and discovery are unnecessary to resolve the matter. (*Id.*). Plaintiff responds that the Patent is not directed merely at a natural phenomenon, but rather describes a "specific, physical, novel[,] and unobvious stone arrangement" that is not contained in prior art. (Pl. Opp. 11).

"Patent eligibility under 35 U.S.C. § 101 is a question of law, based on underlying factual findings." *Uniloc USA, Inc.* v. *LG Elecs. USA, Inc.*, 957 F.3d 1303, 1306 (Fed. Cir. 2020) (citing *SAP Am., Inc.* v. *InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018)). "Like other legal questions based on underlying facts, this question may be, and frequently has been, resolved on a Rule 12(b)(6) … motion where the undisputed facts, considered under the

5

standards required by that Rule, require a holding of ineligibility under the substantive standards of law." *SAP Am., Inc.*, 898 F.3d at 1166.

"Under § 101, patents may be granted for 'any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof.'" *Cellspin Soft, Inc.* v. *Fitbit, Inc.*, 927 F.3d 1306, 1314 (Fed. Cir. 2019) (quoting 35 U.S.C. § 101), *cert. denied sub nom. Garmin USA, Inc.* v. *Cellspin Soft, Inc.*, 140 S. Ct. 907 (2020). The statute, however, implicitly excepts "laws of nature, natural phenomena, and abstract ideas," and thus "[c]laims for these categories of inventions are not patent eligible." *Id.* (citing *Alice Corp. Pty. Ltd.* v. *CLS Bank Int'l*, 573 U.S. 208, 216 (2014)); *see also CardioNet, LLC* v. *InfoBionic Inc.*, 955 F.3d 1358, 1367 (Fed. Cir. 2020). "These categories of subject matter have been excluded from patent-eligibility because they represent 'the basic tools of scientific and technological work,'" *Koninklijke KPN N.V.* v. *Gemalto M2M GmbH*, 942 F.3d 1143, 1149 (Fed. Cir. 2019) (quoting *Ass'n for Molecular Pathology* v. *Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)), and permitting monopolization of such tools "might tend to impede innovation more than it would tend to promote it," *Mayo Collaborative Servs.* v. *Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012).

"To distinguish between eligible and ineligible patent claims, the Supreme Court has fashioned a two-step test," often called the *Alice/Mayo* inquiry. *Cellspin*, 927 F.3d at 1314 (citing *Alice*, 573 U.S. at 217-18); *see also Mayo*, 566 U.S. at 72-73, 77-79. "At step one of the *Alice/Mayo* framework, [courts] ask whether the claim at issue is 'directed to a patent-ineligible

concept,'" that is, a law of nature, a natural phenomenon, or an abstract idea. *Cellspin*, 927 F.3d at 1314-15 (quoting *Alice*, 573 U.S. at 218) (alterations omitted); *see also CardioNet*, 955 F.3d at 1367; *Koninklijke*, 942 F.3d at 1149 (describing this inquiry as "look[ing] at the focus of the claimed advance over the prior art" (quoting *Affinity Labs of Tex., LLC* v. *DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016))); *BASCOM Glob. Internet Servs.* v. *AT&T Mobility LLC*, 827 F.3d 1341, 1348 (Fed. Cir. 2016) (holding that courts must examine the "basic thrust" of the claim at *Alice* step one). "If the claims are not directed to a patent-ineligible concept under *Alice* step one, the claims satisfy § 101 and [courts] need not proceed to the second step." *CardioNet*, 955 F.3d at 1368 (internal quotation marks omitted) (quoting *Data Engine Techs. LLC* v. *Google LLC*, 906 F.3d 999, 1007 (Fed. Cir. 2018)).

If, however, the claims are directed to a patent-ineligible concept, courts move to *Alice* step two to "consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *CardioNet*, 955 F.3d at 1368 (internal quotation marks omitted) (quoting *Alice*, 573 U.S. at 217). "This second step is a search for an inventive concept — *i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotation marks omitted) (quoting *Alice*, 573 U.S. at 217-18).

For a claim to include an "inventive concept," it must "'involve more than performance of well-understood, routine, and conventional activities previously known to the industry.'" *Berkheimer* v. *HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018) (quoting *Content Extraction & Transmission LLC* v. *Wells Fargo Bank, Nat'l. Ass'n*, 776 F.3d 1343, 1347-48 (Fed. Cir. 2014)), *cert. denied*, 140 S. Ct. 911 (2020); *see also In re Rudy*, 956 F.3d 1379, 1386 (Fed. Cir. 2020). This inquiry presents two further questions. The first is "whether each of 'the elements in the claimed product (apart from the natural laws themselves) involve well-understood, routine, conventional activity previously engaged in by researchers in the field[.]'" *Chamberlain Grp.* v. *Techtronic Indus. Co.*, 935 F.3d 1341, 1349 (Fed. Cir. 2019) (alterations omitted) (quoting *Mayo*, 566 U.S. at 73). The second is "whether all of the steps 'as an ordered combination add nothing to the laws of nature that is not already present when the steps are considered separately[.]'" *Id.* (alterations and emphasis omitted) (quoting *Mayo*, 566 U.S. at 79).

**C. Analysis**

"Although it is sometimes challenging for courts to distinguish between laws of nature and applications thereof," the Court concludes that the Patent claims here at issue "fall into the latter category." *Carnegie Inst. of Wash.* v. *Pure Grown Diamonds, Inc.*, 459 F. Supp. 3d 502, 507 (S.D.N.Y. 2020). While the Patent exploits the natural phenomenon of "the appearance of an object changing depending on the angle of viewing" (Def. Br. 10) — which phenomenon results from the reflection and refraction of light — doing so is

8

not disqualifying.  *See Mayo*, 566 U.S. at 71 ("[A]ll inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.  Thus … 'a process is not unpatentable simply because it contains a law of nature or a mathematical algorithm.'" (quoting *Diamond* v. *Diehr*, 450 U.S. 175, 187 (1981))).  The Patent does not claim a monopoly on the general principle of light reflection and refraction or the fact that gemstones specifically may show different colors depending on viewer position, but rather describes in detail several multi-stone settings that purportedly achieve the result of creating color-changing surfaces without requiring the application of a topcoat to the stones or the use of natural or synthetic gemstones that exhibit color change on their own.  (*See* Patent 1:22-2:41; 6:15-8:50).  *Cf. Koninklijke*, 942 F.3d at 1151 ("Importantly, the claims do not simply recite, without more, the mere desired result of catching previously undetectable systematic errors, but rather recite a specific solution for accomplishing that goal[.]").  Thus, the Patent does more "than simply state the law of nature while adding the words 'apply it.'"  *Mayo*, 566 U.S. at 72.  The Patent therefore passes step one of the *Alice/Mayo* test.

But even if it did not, contrary to Defendant's assertion that the Patent does not "invent a new way of achieving [the gemstones'] apparent change in color, or disclose a new technique for setting stones," the Court finds that the Patent purports to do both of those things.  (Def. Br. 11).  The specific stone arrangements set forth in the Patent (*see* Patent 6:15-8:50) constitute an "inventive concept" that harnesses the natural phenomenon of light reflection

9

and refraction in a way that claims to be distinct from, and an improvement upon, the existing art.[2] *Cf. BASCOM Glob. Internet Servs.*, 827 F.3d at 1350 ("[A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces."). As such, the Patent "sufficiently capture[s] the inventors' asserted technical contribution to the prior art by reciting how the solution specifically improves the function of prior art[,]" *Koninklijke*, 942 F.3d at 1151, and thus satisfies the second prong of the *Alice/Mayo* test as well.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED. Defendants are hereby ORDERED to file a responsive pleading on or before **July 19, 2021**. Further, the parties are hereby ORDERED to submit a proposed case management plan to the Court on or before **July 26, 2021**.

SO ORDERED.

Dated: June 28, 2021
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

---

[2] Whether the stone arrangements described in the Patent are, in fact, sufficiently distinct from the existing art such that they satisfy the novelty and non-obviousness requirements of 35 U.S.C. §§ 102 and 103 is a question not presently before the Court. Defendants' motion focuses solely on subject-matter eligibility under 35 U.S.C. § 101. (*See generally* Def. Br.; Def. Reply). *See Carnegie Inst. of Wash.* v. *Pure Grown Diamonds, Inc.*, 459 F. Supp. 3d 502, 507 (S.D.N.Y. 2020) ("[T]he true nature of [defendant's] argument is that plaintiffs' patents represent an insufficient advance over the prior art. But such disputes are properly reserved for a later stage of the litigation.").